IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALL POINTS CAPITAL CORP.,
a foreign corporation,

    Plaintiff,

vs.                                        CASE NO. 5:11-cv-116/RS-EMT

BOYD BROTHERS, INC., a Florida
corporation, et al.,

    Defendants,

_____/

## ORDER

Before me are Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 15) and Defendants' Response in Opposition and Request for Continuance (Doc. 28).

Beginning on July 7, 2006, Defendants entered into a series of installment promissory notes with RCA Capital Corp, the predecessor in interest to Plaintiff. On October 1, 2007, Defendants executed a cross-collateral and cross-default agreement on the promissory notes. Defendants have purportedly defaulted on these agreements.[1]

Defendants seek continuance pursuant to Fed. R. Civ. P. 56(f) so that they may conduct further investigation to support their defenses. However, for the majority of their defenses, any further discovery would be unnecessary because those defenses fail as a matter of law.

---

[1] The promissory notes at issue are governed by the laws of New Jersey (*See e.g.*, Doc. 1, Attach. 1, p.4).

**Notarization and Dating**

Defendants' first, third, fourth, fifth, sixth, and seventh affirmative defenses allege, in some part, that the agreements violate the statute of frauds because they were not notarized. Likewise, Defendants claim in the seventh affirmative defense that the agreement in question is invalid under the statute of frauds because it was not dated. Defendants' have not addressed the notarization or dating in their response.

New Jersey's statute of frauds requires that certain agreements, including loans over $100,000, "shall be in writing, and signed by the party to be charged therewith." N.J. Stat. § 25:1-5. There is no notarization or dating requirement.

**Commercial Impracticability**

Defendants claim in their second affirmative defense that the defense of commercial impracticability due to the BP oil spill excuses their nonperformance. They assert that a significant portion of their customers are located on the Gulf coast and were devastated by the oil spill. (Doc. 38, p. 10-11). As a result, Defendants' printing business was severely impacted.

The doctrine of commercial impracticability provides that "where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Seitz v. Mark-O-Lite Sign Contractors,* 210 N.J.

Super. 646, 65, 510 A.2d 319, 322 (Law Div. 1986) (*citing* RESTAT. 2D OF CONTRACTS, § 261). "The continuation of existing market conditions and of the financial situation of the parties are ordinarily not such [basic] assumptions, so that mere market shifts or financial inability do not usually effect discharge under the rule." RESTAT. 2D OF CONTRACTS, § 261, cmt. b.

Here, Defendant's business may have been affected by the oil spill. However, the oil spill was but one of numerous factors that made up the general market conditions along the Gulf coast which the parties did not contemplate during their agreement. In all likelihood, the parties also did not consider a host of other factors which, subsequent to their agreement, would affect their business: the impending decline in the real estate market; the collapse of Wall Street firms and the subsequent tightening of credit; the rising cost of petroleum; a surge in commodity prices; multiple rounds of quantitative easing. Performance cannot be simply discharged for all unforeseen conditions that affect one's business. Otherwise, every fisherman, hotel worker, and palm-reader along Bourbon Street could forgo their mortgage payment, cancel their cell phone contract, and defer their credit card bills in the wake of the oil spill. This is obviously not a correct interpretation of the law. Rather, there must be a more direct connection to warrant the defense of commercial impracticability. Two examples in the Restatement are instructive.

> Several months after the nationalization of the Suez Canal, during the international crisis resulting from its seizure, A contracts to carry a cargo of B's wheat on A's ship from Galveston, Texas to Bandar Shapur, Iran for a flat rate. The contract does not specify the route, but the voyage would

> normally be through the Straits of Gibraltar and the Suez Canal, a distance of 10,000 miles. A month later, and several days after the ship has left Galveston, the Suez Canal is closed by an outbreak of hostilities, so that the only route to Bandar Shapur is the longer 13,000 mile voyage around the Cape of Good Hope. A refuses to complete the voyage unless B pays additional compensation. A's duty to carry B's cargo is not discharged, and A is liable to B for breach of contract.
>
> The Suez Canal is closed while A's ship is in the Canal, preventing the completion of the voyage. A's duty to carry B's cargo is discharged, and A is not liable to B for breach of contract.

RESTAT. 2D OF CONTRACTS, § 261, illustrations 9 & 10.

Here, the oil spill did not prevent Defendants from doing their printing business. Rather, it made their printing business more difficult and less profitable. Under these circumstances, they are not excused from performance.

**Missing Contract Terms**

Defendants allege in the first affirmative defense that because the promissory notes failed to identify the interest rate charged they should relief should be barred because of the statute of frauds. The statute of frauds does not deal with the specific terms of a contract, but rather requires certain contracts to be in writing. I construe Defendants' contention here to mean that the contract was lacking an essential term and should be void for being indefinite. In New Jersey, where "the essential parts of a contract are spelled out, a court will not refuse to enforce that contract because some of its less critical terms have not been articulated." *Satellite Entertainment Center, Inc. v.*

*Keaton*, 347 N.J. Super. 268, 276 (App.Div. 2002). In such cases, courts will imply a reasonable missing term or, if necessary, will receive evidence to provide a basis for such an implication. *Id*. This is particularly true when there has been part performance of the contract, or--as here--where one of the parties has fully performed his part of the bargain. *Id*.

Here, any failure to include interest rates may affect the calculation of what is in arrears but it does not bar Plaintiff from relief.

**IT IS ORDERED:**

1. The Motion for Summary Judgment (Doc. 15) is **GRANTED, in part, and DENIED, in part**.
2. The first, third, fourth, and seventh affirmative defenses are dismissed because notarization, dating, and identifying an interest rate do not violate the statute of frauds and do not bar recovery.
3. The second affirmative defense is dismissed because the doctrine of commercial impracticability does not excuse performance.
4. The fifth and sixth affirmative defenses remain because Defendants should be allowed time to take discovery regarding the account which contained no signature page, and the cross-collateral and cross-default agreements which did not identify or reference the loan or agreements.

**ORDERED** on July 15, 2011.

                                           /S/ Richard Smoak
                                           **RICHARD SMOAK**
                                           **UNITED STATES DISTRICT JUDGE**